Case number 21-3156, Raymond Hawkins et al. v. Cintas Corporation et al. Oral argument not to exceed 15 minutes per side. Mr. Hockman for the appellants when ready. Good afternoon, your honors. May it please the court, Rob Hockman for Cintas. We've provided three distinct reasons why this case belongs in arbitration. Plaintiff spends a lot of effort addressing our second and third reasons, but frankly, barely addresses or even acknowledges our primary reason. The plain terms of the arbitration agreement and ERISA compel arbitration here. That's our primary argument, and that's where I'll begin. The arbitration agreement could not be any more clear, express, and broad. All of plaintiff's rights and claims in any way related to his employment with Cintas are subject to arbitration. As if that weren't enough, the agreement expressly includes and mentions by name rights or claims arising under ERISA. So that's the arbitration agreement. Then you turn to ERISA. Section 1132A2 provides participants in an ERISA plan the right to bring this case. So it's a simple syllogism that we ask you to apply. Plaintiff agreed to arbitrate all his rights and claims, including those under ERISA. Plaintiff has expressly asserted the right to bring this claim under ERISA. Do we have to disagree with the Monroe decision and create a circuit split? I don't think you have to, Your Honor, and I think part of the reason for that is the breadth, the unique breadth, of this arbitration agreement. There are two differences, as I see it, between this arbitration agreement and the one in Monroe. Monroe did not assert or cover rights and claims under ERISA, and there's just no way to get around the word rights here at all. No matter what you think about whether the claim is brought on behalf of the plan. And then also, I don't believe the arbitration agreement in Monroe specifically referred to ERISA claims, and that goes to our third argument about the fact that the plan is consented here. Because, again, a plan can only act through its administrator. The administrator is the employer. So when the employer puts into the arbitration agreement specific reference to ERISA claims, I don't see how that's materially different. Is that argument, I was confused by the consent argument, is that just a separate argument that both sides of the V have agreed, regardless of whether there's an arbitration agreement or not, both sides have agreed to go to arbitration? What I would say here, I want to be careful about both sides of the V, because the plan's not on either side of the V. So both sides of the V have, that's our first argument. Wait a minute, but the Supreme Court's pretty clear that the claims are being brought on behalf of the plan, right? I actually don't think that's right. I think the claims are being brought on behalf of the plan in a very limited sense that has nothing to do with arbitration. It is true. One thing that's clear from the Supreme Court is that nobody can bring an 1132A2 claim unless plan assets are at stake. But a participant's individual interest, that's the point of LaRue, a participant's individual interest in plan assets, that can be enough. So it's on behalf of the plan, only in this limited way. Okay, but if the plan can consent to arbitration, can the plan settle the case or dismiss the case? I mean, it seems like that point just proves too much. Why wouldn't the plan just drop the case? Well, I think to the extent that your question suggests that the plan is in complete control, I think you're right. The plan can't possibly be in complete control, and there are a variety of cases. I mean, the statute of limitations cases, if you go back and look at Comer, a case we cite in the Ninth Circuit, talks about this. If you take it too seriously, the idea that the claims are brought on behalf of the plan, it's really the plan on that side of the V, Judge Nobandian, then you have all sorts of problems and peculiarities that don't make any sense. Should the statute of limitations be triggered when the plan, not the participant, knew? Yeah, but wouldn't it just be that it would be brought as a class action or a derivative action, and so these people would be in charge of the case like any class rep would, right? So, to be clear, this case law is clear. 1132A2 is not a derivative action. So, that would create a split of authority. You can look at the Kohn case in the Second Circuit on that. I mean, I'm not saying that 23.1 or 23.2 would strictly apply, but it looks to me like a derivative action, doesn't it? I mean, the Seventh Circuit has said that, right? No, I don't. It's either a class act. It's not. You're bringing someone else's interests, right, as a claim. And so, I don't know. I mean, yes, it's not technically a derivative action under Rule 23.1, but I'm just saying it looks kind of like that. And you would have to have some mechanism. It seems to me a class action mechanism or a derivative mechanism to protect the interests of the people that are not there. I think that's true. And Kohn said that expressively. Kohn goes through the process in the Second Circuit. And they say, look, it's not a derivative action. But, because at least in cases where other participants' interests are at stake, that we want to make sure that the individual participant who brought the case is an adequate representative, whether it's Rule 23 or something else, and they kind of leave to the side the proper mechanism for that case. But I think that makes our point. Because I think our position is the claim is brought to vindicate whether it's, in some situations, it might be one. This Court said this in Tulis. It might be one participant. It might be five. It might be ten. It might be everyone. 1132A2, as LaRue held and Tulis anticipated, is indifferent to how many.  It still said it was the claim of the plan, didn't it? That's what Tulis said. It's a claim of a plan. Let me go from there to suppose you succeed, and this goes to arbitration. The claims they're bringing are plan-wide, that your fiduciary duty, the fees are too much. Could the arbitrator then render a ruling that bound the rest of the people? Or if the next arbitration, if this arbitrator rules for you, and the next arbitrator, when two more people bring the same claim, where are you? To the extent you're asking, there's a couple of layers to that question, Judge Boggs. Let me begin with the class, because I think there's an implication in there about the class waiver in this context. And I think the class waiver, and the Seventh Circuit just held this in the Triad case, just noted this. There's really no way around the legitimacy of a class waiver, even in an ERISA arbitration. If you go to arbitration, if the arbitration agreement holds, then it must be an individual action. Is that what you're saying? Yeah, because of the class waiver. Even if the arbitrator then rules that your whole system is bad? Whatever the relief the arbitrator orders would be limited to the party in front of the arbitrator. And that's just true of any class waiver. So it's no different. And let's be clear about this. But why would that be true? I don't understand. Yes, okay, fine, it's not a class action, but it's still an action on behalf of the plan. And if the fees are high, the fees are high for everybody. And you still haven't changed practice. I mean, the relief would affect everybody. That's the second layer of this. It's depending on what the nature of the claim, and depending on the particular violation that the arbitrator, assuming the arbitrator finds a violation at all, depending on the relief the arbitrator orders, and there's no limitation on the relief the arbitrator could order here. Judge Gibbons, you're right. It might have the practical effect. The practical effect. Well, to twist it a little bit, I mean, I would say that, you know, if it's the plan's claim, the benefit to the individuals who are pursuing the claim on behalf of the plan would be an incidental result of the decision, not really a direct one. And they would not be affected differently from anybody else who's a participant. So, I would say that can't be right for this reason. I think you'd create all kinds of weird Article III problems if an individual participant who has no interest in the outcome of the case can nonetheless, by virtue of the fact that he or she is a participant in a plan, can assert... But he or she does have an interest in the outcome of the case. Not always. There's a lot of claims one could raise where one's individual account would be unaffected. Well, wait a minute. But that's not this claim, is it? That's not this one. No, I understand that. No, I mean, this claim is clearly, arguably, one on behalf of the plan. Because it's challenging plan-wide practices, correct? Investment practices, fee practices, right? But even... Is that right? Well, whether it's plan-wide is actually kind of hard to tell at the outset, because the fees might relate to individual accounts. But even if it did, even if it was truly plan-wide, even if it was truly plan-wide, let's be clear. I want to take a step back, because I think something's being missed here. On this view, there's no dispute that this case would be in arbitration if we had put the arbitration provision in the plan documents. There'd be no question from Judge Nelbandian about breaking with the Ninth Circuit, because that... He didn't put it in the plan. Well, I understand that. But the question is why, what policy of either the Federal Arbitration Act or ERISA is served by putting an arbitration agreement in a document that an individual who's agreeing to arbitration... And remember, this is the individual's right as a participant to bring this claim. That person now is just being presented with an arbitration agreement. And just when they agree to participate, they're bound by it. Why is that better? What value is served, and certainly what Federal Arbitration Act value is served, by saying that's the only way to do it? We can't go to our employees and tell them your ERISA claim, along with any others, is going to be subject to arbitration should you want to bring one. There's no problem with getting relief. There's no limitation on the relief the arbitrator can provide. And to the extent the arbitrator issues a ruling... What about the fact that that class waiver also says there's no representative action? Doesn't it? So why... Aren't you going to argue that that would limit the kind of relief? That you can't really bring it on behalf of the plan? Well, I think what we would say is that the arbitrator is not in a position to issue an order that could be entered as a judgment in court requiring us to put a certain amount of money in somebody's individual account, who's not before the arbitrator. Whether that means the arbitrator can't issue an order that could be entered as a judgment in court requiring us to change certain practices with respect to the plan as a whole, that's different. That's a different issue. And we're not denying that such relief is available here, or at least potentially available here. And certainly nothing in the arbitration agreement takes that away. Let me ask one question. You've got many, many employees, and I'm sure they have many, many different agreements. If some of them or one of them happen not to have an arbitration agreement, structurally, what would be any different? And yet, would you concede that that person could go to federal court? Absolutely. And go to federal court and get a plan-wide remedy? Absolutely. But that's just to acknowledge what the Federal Arbitration Act makes clear, that arbitration and litigation have to be treated as equivalent. So long as you can get anything you want, it's okay that some people agree to arbitration and other people agree to litigation. And the plan, at this point, the plan has not agreed to arbitration. That takes us back to who's really, what kind of claim is this? Is it a plan claim or a personal claim? That's right, but whoever's claim it is, it's the participant's right to bring the claim and the participant agreed to arbitrate their rights. I'm sorry, just one quick question. Does the agreement only cover you if you're a current employee or is it if you leave the company but are still in the plan? Would you still be covered? I believe you would still be covered because if your claim relates to the plan, it's the ERISA claim that you have by virtue of the fact that you were an employee in the ERISA of CINTAS and thereby a participant in the plan, so you'd still be covered. Thank you for your indulgence and the remainder of my time. May it please the court. My name is Mark Jondo on behalf of the plaintiffs. I think to start off, it's important to explain what the claims are in this case. These are plan-wide allegations. It is clear from our complaint we bring breach of fiduciary duties on the process used by the fiduciaries in this case, and that process resulted in excessive fees to multiple funds, some of which our clients were not invested in, as well as excessive fees for record-keeping costs. So it is clear, and we also ask for equitable relief such that if the court were to find the fiduciaries breach of fiduciary duties, the ability to remove fiduciaries from the plan. So from A to Z, there is no individual action, there's no individual claims being pledged in this case. And to answer, I'll get into my points in a minute, but if the court were to reverse the district court's decision, I do believe you would create a circuit split, not just the Ninth Circuit, but the Second Circuit, and I'll explain that as I go through. I think one of the points that I wanted to make is that the court may not even have to decide all the big issues here, because in Section 8 of the Employment Agreement, the rights and claims that the appellants speak of are rights and claims that are supposedly arising out of or in any way related to the employee's employment with employee. Now, the Second Circuit in Cooper v. Ruane just recently had another arbitration case before it, and what they found, I think is important here too, that the types of claims that was brought in the Cooper case, as well as the type of claims being brought here, have nothing to do with employment of the employees. Importantly, there is, our claims in this case, hinge entirely on the investment decisions of the Sintas fiduciaries. There is no connection of the plaintiff's own work. But why, I mean, but ERISA is specifically mentioned in that section. I mean, what would be a claim, what would be an ERISA-related claim that would have to go to arbitration then? Well, if he had specific benefits, which if it was a different type of, if it's a benefits, like a defined benefit plan, for instance, where the, or where the company didn't pay you what you were owed, and you could prove it, it was just a, factually didn't pay you what you were owed, and it was related to like a severance agreement, for instance, or if it's related to your direct employment. So, I mean, I... If they didn't credit you adequately while you were working there. Yeah, yeah, and it could come under ERISA, but I think that's not this case, and I don't want to get into some other facts that are not this case. This case only challenges what are essentially investment decisions made on behalf of the plan, and it challenges those on several bases, right? That's correct, Your Honor. And just to finish my point on how this is not related to the employment, under ERISA, beneficiary, under this plan, beneficiaries are also entitled to a plan that's run prudently, but beneficiaries are not employees of the company. So, it doesn't make sense that beneficiaries would be, you would have an employment agreement that applies to somebody who doesn't work there. And I think the, the one point, too, that is, that I think is important here is that you can actually opt out of being a participant in the plan. When you first join the plan, you're automatically enrolled, but you can affirmatively opt out. So, if you can opt out of a plan, how can that be part of your employment? So, I think that's one thing to consider. With respect to creating a circuit split with Monroe, the facts of this case are in line with the facts of the Monroe case. In Monroe, just like here, the plaintiffs had to sign an employment agreement. But just in that case, they also pledged, they also alleged a breach of fiduciary duties based on a lack of an imprudent process that resulted in excessive fees and high record-keeping costs. The, what the Ninth Circuit said was, well, look, these are plan-related, obviously these are plan-related allegations, and the plan here did not agree to go to arbitration, because this is an employment agreement, and the plan's not in it. That was clear from the face of it. The, which also leads to the other point, well, in this case, did the plan actually agree to go to arbitration? And our position is that it did not. I think, I think Your Honor sort of hit the nail on the head. In order, you know, ERISA sets up certain structures. You have plan documents, you have summary plan descriptions that the participants and the beneficiaries get to look at to figure out what to do, how the plan works, how to make appeals, claims appeals. If there's going to be any information that was specific to a plan, it should appear in the plan document. That wasn't the case here. They had the chance to amend the plan in 2010 and 2016 when the plan was amended. They never added any language about forcing plan participants to go to arbitration. And, you know, as a, just as, it does make a difference as a policy reason. If an employee is coming to work for your company and you put in this phase an employment agreement, I think it's doubtful that that employee believes that he's signing away his rights under ERISA by signing that employment agreement. Obviously, the most logical place to put any type of agreement regarding what you do to vindicate your rights under ERISA would be a plan document. They didn't do that here. You know, I don't know if they plan to do it, but it hasn't been done. I don't think it matters why they didn't do it, whether they did it or did not do it, but failing to do that just means that the plan itself did not give consent. Their reasoning that the, because CENTAS is the plan sponsor and signed the... Well, how would the plan consent? The Ninth Circuit says the plan consents by signing, by amending as a plan sponsor, amending the plan document. So there's no way the plan can consent in the scenario here. Is that your position? That's my position. It doesn't make any sense for the, well,  and that they've moved to compel. Well, the, I mean, the way we'll look at it... Can your clients settle the case on behalf of the whole plan? Would your clients be able to enter into a settlement agreement? On behalf of the whole plan? I mean, would you, I take it you would have to wait for a class to be certified? Is that... No, I've done these cases for 15 years. No, you can settle a claim before a class is certified, technically, but you have to file a motion for class cert with your settlement agreement. So before my clients can settle on a classified basis, the court has to settle, has to... You would have to give notice to the class and opt out and whatever? There is no opt out on the, generally these cases are certified on the 12B1. So it would be a B1 class? That's right. So what happens is that you will, the court will preliminarily certify the class that you send that notice to the class to let them know there's a settlement and the class has been certified. And they can object, but they can't opt out. But it does provide relief to the entire class. You can't settle on behalf of the class without the rest of the plan participants being notified and the approval of the court. That's correct, Your Honor. So it's similar to some other kinds of settlements in some other context. That's right. And in fact, Your Honor, these are derivative cases. I know even though we bring them as a class, even though we bring these cases as class actions, there have been a couple of cases where plaintiffs... Do you have to bring it as a class? You do not. That's what I was going to say. Some of the cases suggest that you almost have to bring it as a class. Am I reading those cases incorrectly? You are correct. Colvin Kaufman from the Second Circuit says that, look, you don't have to bring this as a class. It's derivative, but you bring it as a class so that you have the court's input and you have the protections of a class because you have a lot of people who are involved in it. It's more of a procedural matter. But there's a case... It's going to be approved as a class. The question is whether you have to initiate it as a class action or whether you can convert to a class action when settlement is... Yeah, I had a case in the Northern District of Ohio against Diebold, Diebold Company, about 10 years ago. I filed for class certification. The court denied it and said, you need to move. This is a derivative case. We ended up settling Diebold, but in order to settle it, we had to settle it as a class action. So the settlement agreement called for class. The court blessed it and it was finalized. There was another case in First American in the Ninth Circuit about nine years ago. Both my cases. So, yes, you can bring it derivatively, but if you settle, you need the court's protection of it and you settle as a class action. Could you have brought this case as an A1B case? Could I have brought it? Could you have? No, I think we brought it under the... I don't think I should have. I think our Section 502A claim is appropriate. Would it affect the arbitrability if it had been brought under the other provision? I don't know, Your Honor. I haven't dealt with that specific question. Chief Roberts' concurrence in LaRue talks about maybe that's the more appropriate vehicle in some of these cases. That's something I haven't addressed before. I'm not sure how to come out on that. There's a couple more points I wanted to make addressing the appellant's case here. Primarily, I wanted to address, they recently submitted a role, a supplemental authority submitted in two cases. One was a district court case versus Cumulus out of the Northern District of Georgia. That case, obviously, is a district court case, but that case dealt with a release issue. Here, the appellants have specifically said that the cases relating to releases are separate and different from the type of case here where it doesn't address release of claims, but rather where cases can be heard. The other case, which I think has some touches on this case, is the Smith v. Triad case out of the Seventh Circuit. Although defendants cited, I think one of the points out of Triad is that when you have a class waiver provision, it is possible that it can be, it can fall under the effective vindication exception in arbitration clauses in the sense that if you have a provision in a arbitration agreement that forecloses statutory right, that makes the arbitration provision invalid. The issue in Triad was that the arbitration agreement was not severable, so the whole thing had to be thrown out. Here, you have a class action waiver, which can be severed, but if it stays in, I believe you asked a pundit's question, if it stays in and you go into arbitration, it will prevent the employee from a certain rights such as having some of the fiduciaries removed from position. It would cause, it would foreclose statutory rights. Therefore, I think that waiver on that basis would be invalid if we were to go to arbitration. But as we argue... Do you think that provision would prevent you from getting plan-wide relief through one individual? Absolutely, because it says you can only bring... I'm not sure I would concede that. I don't know that I read it that way. It says no class action, but I don't know whether it would limit the relief. Well, this is how I read it. It says, employee and employer shall only submit their own individual claims in arbitration and will not seek to represent the interests of any other person. I read represent the interests of any other person as having, removing a fiduciary. That is not your own interest, but that's actually the interest of other people. I think it's forbidden a right that is allowed under ERISA. I see my time's up. Our brief goes through different reasons why this agreement doesn't apply to this case and why certain of the provisions are outside the scope of the arbitration agreement. With that, I'll rest. Thank you, Your Honors. Very quickly, I want to hit some key points. There was a nice exchange about what happens, can you settle a claim without approval of court? But I think that that exchange missed the point. The point isn't whether you can settle as class. The point is whether you can settle as an individual. And there's nothing that prevents an individual participant from settling as an individual. And of course, you wouldn't have class certification. The exchange was perfectly correct if the claim is brought on behalf of the plan, right? But this claim, you see, my point is, the fact that you can release as an Alfonso and you can settle claims on individual bases shows that the claim is also brought to vindicate individual participant interests. And that's all that matters. That's enough. That's what gives the individual the ability to individually arbitrate. It's a recognition. In other words, to hold otherwise. To deny the individual the ability to allow arbitration of their individual ERISA claims. As this agreement, no doubt, Judge Albanian, this arbitration agreement absolutely functions as clear a consent as any. And the Ninth Circuit in Monroe, didn't have an arbitration agreement like this, which means that you wouldn't be splitting with Monroe. What you'd be saying is, to the extent you read Monroe as to allow the plan to consent only in plan documents, only exclusively in plan documents, that's wrong. And there isn't a reason why it should be only in plan documents. Again, to vindicate the interests of the Federal Arbitration Act. But I think... Sorry. So then who consents for the plan? Well, the administrator always is going to have to consent. Or the administrator, or whoever it is. It's always going to have to be the human being that's... And the administrator is the committee that CENTAS appoints? The administrator is CENTAS, yeah. There are agents acting on behalf of CENTAS. Right. Well, but, I mean, there are formalities. Does that mean CENTAS is CEO? Or does it mean somebody in one of these boards? I tried to follow them and I got lost in the maze. Yeah, I think there are specifically identified individuals who are responsible to be the administrators of the plan. But then what's the answer to my other question? Which is, okay, fine, not only do I consent arbitration, I also don't want this claim brought for the plan. So I consent to settling the claim for zero dollars. This is my point. ERISA's 1132A2 doesn't give the plan the right to control this claim. It gives it to participants in the Department of Labor. That's the reason. Then why can you consent to an arbitration? I don't understand the... It seems to me they rise and fall together, don't they? You don't control the litigation. You don't control where you sue. You don't control... I mean, the individual controls all that. If the individual controls all that, why shouldn't the individual control arbitration as well? Why wouldn't the individual be entitled? If the individual can release, as the Alfonso case makes clear... Because the argument would be the individual is not... The individual is bringing the claim like a class rep brings a claim. But they can't... They're still acting on behalf of somebody else, right? And themselves. And themselves. It's brought individually and on behalf. And you have the right to bring this claim individually and you have the right to agree to arbitrate this claim individually. It's the same. It matches perfectly. You end up with the absurdities only if you say they can't arbitrate. They can settle claims, but they can't arbitrate? That doesn't make any sense. Because arbitration is equivalent to vindication of the right. But you can release claims, which is a much more drastic power under the circumstances. I appreciate that. Thank you. Thank you, Your Honors. I believe those are the only two argued cases for the afternoon. First, let me say to those who just argued, we appreciate your argument. We'll consider the case carefully.